

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

December 18, 1970

Honorable Bevington Reed
Coordinating Board
Texas College and
    University System
P. O. Box 12788, Capitol Station
Austin, Texas 78711

Opinion No. M-751

Re: May Odessa College con-
tract with a private corpo-
ration, where a member
of its Board of Regents is
a minority stockholder and
President of such corpora-
tion, where the benefits
derived from such contract
are placed in a scholarship
fund?

Dear Dr. Reed:

Your request for an opinion presents the following facts:

"In approximately 1952, Del-Tex, Inc. placed vending
machines on the campus of Odessa College. These
machines were placed there with the permission of the
College Administration.

"The College requested, and Del-Tex, Inc. paid, 30%
of the gross for cold drinks and 10% of the gross for
candy and coffee sold into the General Fund of Odessa
College.

"There was no written contract entered into at that time,
and there has been no subsequent written contract entered
into.

"In the early 1960's, Del-Tex, Inc. no longer operated
the vending machines, but the operation of Del-Tex was
taken over by West Texas Vending, Inc., which is partly
owned by Del-Tex, Inc.

"In 1960, the Board of Regents of Odessa College directed

the Business Manager of the College to deposit
all sums received from the vending company in-
to the Odessa College General Scholarship Fund
rather than depositing it into the General Fund
of the College.   The administration of the College
awards scholarship funds to worthy students from
the proceeds it receives from the vending machine
company.

"In 1967, the President of Del-Tex, Inc., who owns
no stock in Del-Tex, and receives no bonus from
any sales made by Del-Tex, became a member of
the Board of Regents.   This same regent is President
of West Texas Vending, Inc., and owns about 20% of
the stock.

"There are at this time three other vending machine
companies which have vending machines on the campus
of Odessa College.   The companies owning the vend-
ing machines pay a percentage of their gross receipts
into the same scholarship fund.   None of the vending
machine companies have written contracts, and it is
the understanding between all of the vending machine
companies and the College that they can be asked to
take their machines from the campus at any time, or
they may voluntarily take the machines from the campus
at any time.

"There is no restriction on the number of vending
machine companies which are allowed to have machines
on the campus.   Any vending machine company can
place machines on the campus merely by obtaining
permission of the administration.   It would be expected,
however, that any vending machine company desiring
to place vending machines on the campus would be re-
quired to pay a percentage of the proceeds into the
Scholarship Fund."

From the above stated set of facts we must determine if this is a
contract entered into by Odessa Junior College, acting by and through its

Board of Regents and West Texas Vending Machine Company; and if so, would such contract be in violation of the public policy by reason of a member of the Board of Regents being a minority stockholder (20%) and President of West Texas Vending Machine Company.

Even though the proceeds derived from the vending machines are used for a worthy purpose (Scholarship Fund), the Board of Regents has control of such funds as indicated in the facts submitted.

It appears from the facts submitted that there is an express oral contract between Odessa College and West Texas Vending Machine Company in view of the fact that the college has authorized the vending machine companies to place their vending machines in the college buildings or on campus, for which locations the college receives 30% of the gross on cold drinks and 10% of the gross on candy and coffee from the vending machine companies.

Black Law Dictionary, 4th Edition, defines an express contract as follows:

> "An express contract is an actual agreement of the
> parties, the terms of which are openly uttered in
> distinct and explicit language, either orally or in
> writing.  2 Bl. Comm. 443 and other authorities cited."

From the cases cited, it is clear that a member of the Board of Regents is a public official.  In the case of Schurz v. Telfer, 74 S. W. 2d 327 (Tex. Civ. App. 1934, no writ) the Court held that a school trustee of a county common school district was a county officer.  Also see Buchanan v. Graham, 81 S. W. 1237, 1239, (Ct. of App. 1904).

The Legislature has not defined conflict of interest in the context of the facts presented.  However, in Attorney General's Opinion No. O-1589 (1939) this office held:

> "It is well settled in Texas that if a public official
> directly or indirectly has a pecuniary interest in a
> contract, no matter how honest he may be, and al-
> though he may not be influenced by the interest, such

contract is against public policy. Myers, et al v. Walker, et al, 276 S. W. 305. Also, see Attorney General's Opinion No. O-878 (1939)."

These authorities are determinative of our answer. This office has heretofore so considered this principle of law in Attorney General Opinion No. M-625 (1970). See also 43 Am. Jur. 107, Public Officers, Sec. 300, and cases cited. Until the Legislature sees fit to modify this common law principle, which Texas has adopted, a court is without authority to uphold the contract before us.

## SUMMARY

Odessa College cannot lawfully enter into a contract with a vending machine company where a member of its Board of Regents is the President and a stockholder of the vending machine company, since this would be in violation of the public policy of the State of Texas forbidding public officials who have a pecuniary interest in a contract from contracting with entities in which they have a pecuniary interest.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John H. Banks
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
John Reese
Dick Chote
Harriet Burke
Ed Esquivel

Meade F. Griffin
Staff Legal Assistant

Alfred Walker
Executive Assistant

Nola White
First Assistant